*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | : | Civil Action No. 12-1266 (FLW) |
| | : | Bankr. Case No. 11-28230 (MBK) |
| LUIGI SCOTTO DICLEMENTE | : | |
| | : | |
| Debtor-Appellant | : | **OPINION** |
| | : | |

**WOLFSON, United States District Judge:**

Debtor-Appellant Luigi Scotto–DiClemente's ("Debtor" or "DiClemente") appeals an order of the U.S. Bankruptcy Court, District of New Jersey. The Bankruptcy Court denied Debtor's Motion for Reconsideration of the court's dismissal of Debtor's case. The issue on appeal is whether the Bankruptcy Court erred when it included Second and Third Mortgages of Amboy Bank f/k/a Amboy National Bank's ("Amboy") *in rem* claims, which survived Debtor's prior Chapter 7 discharge, in the calculation of Debtor's unsecured debt under 11 U.S.C. § 109(e). For the reasons that follow, the Court affirms the Bankruptcy Court's holding.

**I.   BACKGROUND**

On December 15, 2003, Debtor executed and delivered a Note to Amboy in the original principal amount of $180,000. Appellee Br., Certification of Stanley J. Koreyva, Jr. ("Koreyva Cert."), ¶ 3. On December 15, 2003 Debtor—in connection with the Note and as security for the loan—executed and delivered to Amboy a mortgage (the "First Mortgage") on Debtor's primary residence located at 23 Snyder Ave., Keansburg, New Jersey (the "Property"). Id. ¶ 4. The First Mortgage was recorded with the Clerk of Monmouth County on February 11, 2004. On April

1

27, 2005, Debtor[1] executed and delivered a Choice Equity Line of Credit (the "Equity Line") to Amboy, in the principal amount of $75,000.  Koreyva Cert., ¶ 6.  In connection with the Equity Line and as security for the loan, Debtor executed and delivered to Amboy a second mortgage (the "Second Mortgage") on the Property on April 27, 2005.  Id. ¶ 7.  The Second Mortgage was recorded with the Clerk of Monmouth County on June 1, 2005.[2]  On October 9, 2008, A & T, Inc., d/b/a Romeo's Restaurant & Pizza ("Romeo's") executed and delivered to Amboy an Installment Note in the principal amount of $363,279.57 (the "Installment Note").  Id. ¶ 10 and Exhibit "F."  On October 9, 2008, Debtor, in connection with the Installment Note, executed and delivered to Amboy a General and Continuing Guarantee.  Id. ¶ 11 and Exhibit "G" thereto.  As security for the Installment Note and Debtor's Guarantee, Debtor executed and delivered to Amboy a mortgage on the Property (the "Third Mortgage").  Id. ¶ 12.  The Third Mortgage was recorded with the Clerk of Monmouth County on October 29, 2008.  Debtor defaulted on all three mortgages after failing to pay the August 2009 installment for each mortgage.  Id. ¶ 8, 12, 13.  Debtor has made no payments since.  Id.

Debtor's schedules that he filed with the Bankruptcy Court reflect that the Property—valued at $185,000—is subject to Amboy's First, Second, and Third Mortgages.  Id. ¶ 1.  Amboy's Amended Proof of Claim demonstrates that Amboy has a total claim in the amount of $761,380.80.  Supplemental Certification in Support of Motion for an Order Dismissing Case, of Cyndi Bleier, Esq. ("Bleier Cert."), ¶ 4, Exhibit "A."  This amount represents: (1) $191,447.64 due in connection with the First Mortgage (loan no. 70306491); (2) $86,095.87 due in

---

[1] Debtor actually executed and delivered the Equity Line with his fiancée, Jessica Scotto DiClemente, but for simplicity purposes I refer to both parties collectively as Debtor.

[2] Upon Debtor's request, Amboy converted the outstanding balance of the Equity Line to a 15-year fixed rate loan, resulting in two loan numbers being assigned (9701769 and 8701769), both of which are secured by the Second Mortgage.  Id. ¶ 9 and Exhibit "E" thereto.

connection with the Second Mortgage (loan nos. 9701769 and 8701769); and (3) $478,141.87 due in connection with the Third Mortgage (loan no. 1139200), plus pre-petition legal fees and costs in the amount of $5,695.42.  Id. at Exhibit "A".  Of that amount, at least $540,854.97 is in arrears.  Id.

On August 19, 2010, Debtor filed a Chapter 7 Bankruptcy Petition with the United States Bankruptcy Court for the District of New Jersey.  In re DiClemente, Case No. 10–35480 (the "Chapter 7 Case").  On December 10, 2010, the Debtor received a Chapter 7 Discharge.  Holdren Cert. ¶ 3. The Debtor filed the current Chapter 13 petition six months later on June 14, 2011.  In re DiClemente, Case No. 11–28230.  Id. ¶ 4.

Amboy filed a motion to dismiss Debtor's Chapter 13 case for cause.  The Bankruptcy Court granted Amboy's motion, finding that Amboy's Second and Third Mortgage liens—totaling $564,237.74—were wholly unsecured, resulting in the Debtor exceeding the § 109(e) debt limitations for eligibility as a debtor under Chapter 13.  In re Scotto–DiClemente, 459 B.R. 558, 571 (Bankr. N.J. 2011).  DiClemente moved for reconsideration arguing that the Bankruptcy Court erred in including his *in rem* liabilities on Amboy's Second and Third Mortgage liens in the calculation of unsecured debt.  That motion was denied.  In re Scotto–DiClemente, 463 B.R. 308 (Bankr. N.J. 2012).  Presently before the Court is Debtor's appeal of the Bankruptcy Court's denial of his Motion for Reconsideration.

**II.     STANDARD OF REVIEW**

This Court has jurisdiction to hear appeals from final orders of the bankruptcy court.  28 U.S.C. § 158(a). Such appeals are a matter of right.  Appellate courts review "the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof."  In re United Healthcare System, Inc., 396 F.3d 247, 249 (3d

Cir.2005) (quoting In re Trans World Airlines, Inc., 145 F.3d 124, 130–31 (3d Cir.1998)). Because the only issue raised on appeal here concerns a question of law, and there is no dispute concerning material facts, the Court will review the Bankruptcy Court's determination *de novo*. In re Pransky, 318 F.3d 536, 542 (3d Cir. 2003) ("Because we can just as properly clarify this legal issue, we shall not on this ground refuse to exercise our jurisdiction."). See Appellee Br. at 1 ("As there is no dispute concerning the facts related to the issue presented, it is agreed that the applicable standard of review is *de novo*.").

### III. DISCUSSION

Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and sole proprietors with relatively small debts for whom the Chapter 11 reorganization process is too cumbersome and onerous. See generally, H.R. Rep. No. 95-595, at 116-119 (1977), reprinted in Vol. C, Collier on Bankruptcy, App. Pt. 4(d)(i) (Matthew Bender 15th Ed. Revised). To be eligible for Chapter 13, a debtor must come within the statutory limits prescribed in the Bankruptcy Code. In particular, Section 109(e) provides: "Only an individual with regular income that owes, on the date of the filing of the petition, non-contingent, liquidated, unsecured debts of less than $360,475 and non-contingent, liquidated, secured debts of less than $1,081,400 . . . may be a debtor under this title." 11 U.S.C. § 109(e). Section 506(a) discusses bifurcation of allowed claims into secured and unsecured claims. The section provides:

> An allowed claim of a creditor secured by a lien on property…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property…and is an unsecured claim to the extent that the value of such creditor's interest…is less than the amount of such allowed claim.

11 U.S.C. § 506(a). As the Court in In re Prosper explained, "the term 'unsecured claim' in § 506(a) includes the unsecured portion of an undersecured claim." In re Prosper, 168 B.R. 274, 278 (1994). As such, the portion of a creditor's claim exceeding the collateral property's value

4

constitutes an "unsecured claim component" under § 506 (a). United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 239 n.3 (1989) (internal quotation marks omitted) ("Thus, a $100,000 claim, secured by a lien on property of a value of $60,000, is considered to be a secured claim to the extent of $60,000, and to be an unsecured claim for $40,000.").

It is undisputed that the balance of Debtor's First Mortgage lien ($230,305.70) exceeds the Fair Market Value of Debtor's primary residence ($185,000).[3] Bleier Cert. Exhibit "A"; Debtor's Br. 7. DiClemente and Amboy disagree about whether Amboy's Second and Third Mortgages should be included in unsecured claims. Debtor's logic that the Second and Third Mortgages should not be included unfolds in three steps. First, these liens were discharged in the prior Chapter 7 proceeding and are wholly unsupported by equity, making them unenforceable. Debtor Br. at 8. Second, unenforceable liens are void because no right of payment exists. Id. at 9. Third, because the liens are void, they cannot be considered a debt or claim under § 109(e).

Debtor's logic is predicated on the faulty premise that Amboy has no right to payment on its Second and Third Mortgages since "it is [] undisputed" that Debtor's prior "Chapter 7 discharge [made] any outstanding balance on the Mortgage Notes unenforceable." Debtor Br. at 8 (asserting that "subordinate liens unsupported by any equity are voidable and unenforceable"). But Amboy's liens persist as enforceable obligations against DiClemente's property as *in rem* claims. DiClemente compounds his error further by confusing voidable and voided. According to Debtor: "an unsecured lien subject to being voided is not a debt; it is not *per se* payable and it has no value." Id. Since "a voided lien is not payable, [] it is not a debt, or a liability or something owed. It is void." Id. at 9.

In Johnson v. Home State Bank, the Supreme Court explained that a discharge in a

---

[3] When considering a debtor's eligibility for Chapter 13 relief, the Court may rely on the debtor's schedules. See, e.g., In re Scovis, 249 F.3d 975, 982 (9th Cir. 2001).

Chapter 7 liquidation "extinguishes *only* 'the personal liability of the debtor…a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (quoting 11 U.S.C. § 524(a)(1)) (internal citation omitted) (emphasis in original).[4]

> Applying the teachings of Davenport, we have no trouble concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5). Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

Id.[5]; see also In re Scovis, 249 F.3d 975, 983 (9th Cir. 2001) ("[A] vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes."); In re Lindsey, Stephenson & Lindsey, 995 F.3d 626, 628 (5th Cir. 2003); In re Groh, 405 B.R. 674, 675–76 (Bankr. S.D. Ca. 2009) ("[T]he unsecured portion of a … creditor's undersecured judgment lien on the debtor's residence is to be counted as unsecured debt under § 109(e) for Chapter 13 eligibility purposes."); In re Fuson, 404 B.R. 872, 875–76 (Bankr. S.D. Ohio 2008).

Thus, contrary to Debtor's position, the outstanding balance on the Mortgage Notes is enforceable. The earlier Chapter 7 proceeding discharged DiClemente's personal liability only;

---

[4] Debtor tries to distinguish Johnson on its facts, but I am not convinced. The Supreme Court's holding is clear and applicable here.

[5] The term "claim" in § 101(5) is intended to be given the "broadest available definition" possible and an allowed claim "is enforceable against *either* the debtor or his property." Johnson, 501 U.S. at 85. "Debt" and "claim" are synonymous under the Bankruptcy Code. Section 101(12) defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). By defining "debt" in terms of "claim" Congress clearly intended the meanings to be "coextensive." Penn. Dept. of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990).

the surviving mortgage interest has the same properties as a nonrecourse loan and is enforceable against debtor's property. Johnson, 501 U.S. at 86 ("Insofar as this mortgage interest … is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan."). The continuing unsecured claims of Amboy's Second and Third Mortgages are enforceable, unsecured debts within the meaning § 109(e) and should be included within the Chapter 13 calculus.

DiClemente relies on two district court cases—In re Shenas, from the Northern District of California, and Cavaliere v. Sapir, from the District of Connecticut—in support of his argument. In In re Shenas, debtors received a Chapter 7 discharge prior to filing their Chapter 13 case. 2011 WL 3236182, at *1 (Bank. N.D.Cal. 2011). The Court concluded that because this discharge rendered the debtor's debt unenforceable as a personal liability, "the debt is not allowable as an unsecured claim in this case. Section 502(b) and 506(a). It follows that the Debtors do not owe any unsecured debt to [creditors] for purposes of the unsecured debt limitations of § 109(e)." Id. (citing Cavaliere v. Sapir, 208 B.R. 784, 787 (D. Conn. 1997)).

As in Shenas, the debtors in Cavaliere asserted that the Bankruptcy Court erred in its § 109(e) eligibility calculation by including debts that were discharged in the debtors' prior Chapter 7 case. Cavaliere v. Sapir, 208 B.R. 784, 785-86 (D. Conn. 1997). The court noted that by the time the Chapter 13 case was commenced, the discharged claims were only enforceable through an *in rem* action against the debtors' property. Id. "[P]ursuant to the § 506(a) determination," the court concluded the claims were wholly unsecured, and not allowed under § 502(b)(1). Id. at 786. The court held that the discharged claims were disallowed because they were "unenforceable against either the debtors (pursuant to the [Chapter 7] discharge) or their

7

property (pursuant to the § 506(a) determination)," and therefore, should not have been included in the § 109(e) unsecured debt limit calculation. Id.

Here, the Bankruptcy Court—criticizing Debtor's reliance on Shanas and Cavaliere—held that "Amboy's *in rem* claims must be included in calculating the unsecured debts of the Debtor under 109(e)." DiClemente, 463 B.R. at 312. This Court agrees with the Bankruptcy Court's analysis and also "takes issue with the conclusions reached in Shenas and Cavaliere, wherein the courts summarily posited that the surviving *in rem* claims are not enforceable under § 506(a)." Id. at 314 n.3. Section 506(a) is not a claim disallowance provision. It simply determines the amount of a secured claim by valuing the underlying collateral or security interest. Neither court explained how *in rem* claims can be viewed as "unenforceable against the debtor *or property of the debtor*" so as to be disallowed under § 502(b). Cavaliere, 208 B.R. at 785 (emphasis added). By definition, *in rem* claims are claims *against property*. Nor do Shenas or Cavaliere explain how their holdings comport with the clear dictates of Johnson. Courts in this District tack to an approach that is more logical and consistent with controlling precedent. For example, in In re Morford, Judge Pisano considered nearly the identical issue that is before me today and found that "based upon the express holding and reasoning in Johnson," Debtor's arguments were misplaced and unsecured subordinate mortgages must be included within the Chapter 13 analysis. In re Morford, No. 11-2586, 2012 U.S. Dist. LEXIS 6532, at *4 (D.N.J. Jan. 20, 2012).

Debtor argues the *in rem* claim that survived the Chapter 7 discharge is voidable through the combined application of § 506 and § 1322(b)(2) when the plan is completed *to fruition*. Debtor Br. at 11. Were the plan to be confirmed, Debtor argues that the lien will be voided and no right of payment will exist. Section 1322(b)(2) provides that the debtor's plan may "modify

8

the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).  As already discussed, Amboy's Second and Third Mortgages are still considered claims for purposes of Chapter 13 irrespective of the earlier discharge of Debtor's personal liability on those loans.  In re Groh, 405 B.R. 674, 675–76 (Bankr. S.D. Ca. 2009) ("the unsecured portion of a … creditor's undersecured judgment lien on the debtor's residence is to be counted as unsecured debt under § 109(e) for Chapter 13 eligibility purposes").  Therefore, the Court does not even reach the question of § 1322's voiding powers because Debtor's Plan is not confirmable and cannot be completed to fruition.  Amboy has not accepted the plan and retains the liens until DiClemente's underlying debt is paid or the liens are discharged.  11 U.S.C. § 1325(a)(5).

    Debtor's final argument is essentially a restating of his main point: "[i]f Amboy's *in rem* claim is deemed a payable debt, then the amount due is Zero[]" because there will be no equity to satisfy the mortgages should Amboy foreclose. Debtor Br. at 11-12.  This argument fails for the same reasons stated above.  Although Amboy's three mortgage liens may not be payable *beyond* the equity in the Property, Amboy is entitled to the equity in the Property.  See Johnson, 501 U.S. at 83.  In the same vein, Amboy's right to foreclose on the Property might be stayed by § 362, but it is not eviscerated. See id.; Nobelman v. Am. Sav. Bank, 508 U.S. 324, 329-30 (1993) (concluding the rights "bargained for by the mortgagor and the mortgagee[ are] … protected from modification by § 1322(b)(2)").

    The Second and Third Mortgages survive as unsecured claims for purposes of Chapter 13.  Therefore, DiClemente owed at least $564,237.74 in unsecured debt at the time of filing the

9

Chapter 13 case.  Thus, DiClemente's total unsecured debt exceeds the ceiling set forth in 11 U.S.C. § 109(e) by more than $200,000.

## IV.   CONCLUSION

Debtor's argument that subordinate liens unsupported by equity are unenforceable is wrong.  The Supreme Court in <u>Johnson</u> conclusively established that the surviving mortgage interest is enforceable against the Property through foreclosure.  Therefore, the debt ceilings of § 109(e) are exceeded by Debtor's unsecured claims and he is not eligible for Chapter 13.

The Bankruptcy Court's order dismissing the case is affirmed.  An Order will be entered consistent with this Opinion.


Dated: August 13, 2012                                          /s/    Freda L. Wolfson
                                                                              Honorable Freda L. Wolfson
                                                                              United States District Judge